IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:08-CR-164-D-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| DEWAYNE CORNELIUS MELVIN, | ) | |
| | ) | |
| Defendant. | ) | |

On April 12, 2022, Dewayne Cornelius Melvin ("Melvin" or "defendant") moved pro se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 82]. On May 18, 2022, the government responded in opposition [D.E. 85] and attached exhibits [D.E. 87, 88]. Melvin did not reply. On August 9, 2022, Melvin filed a pro se renewed motion for compassionate release and moved for appointment of counsel [D.E. 89]. On October 31, 2022, Melvin moved to require the government to show cause why he should not be granted a sentence reduction [D.E. 91]. As explained below, the court denies Melvin's motions for compassionate release, denies Melvin's motion to appoint counsel, and denies as moot Melvin's motion to show cause.

I.

On October 6, 2008, pursuant to a plea agreement, Melvin pleaded guilty to distribution of 50 grams or more of cocaine base ("crack"). See [D.E. 1, 22, 23]. On April 21, 2009, the court held Melvin's sentencing hearing and adopted the facts set forth in the Presentence Investigation Report ("PSR"). See Fed. R. Crim. P. 32(i)(3)(A)–(B); PSR [D.E. 72]; [D.E. 38]. The court calculated Melvin's total offense level to be 34, his criminal history category to be VI, and his advisory guideline range to be 262 to 327 months' imprisonment. See PSR ¶¶ 45, 46, 48. After considering

the arguments of counsel and all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Melvin to 327 months' imprisonment. See [D.E. 39] 2. Melvin did not appeal.

On November 17, 2011, December 15, 2011, August 17, 2012, and October 8, 2013, Melvin moved for a sentence reduction under 18 U.S.C. § 3582(c)(2), U.S.S.G. § 1B1.10(c), and Amendments 750 and 759 to the Sentencing Guidelines. See [D.E. 42, 43, 44, 48]. On October 23, 2013, the government responded in opposition. See [D.E. 49]. On December 23, 2013, the court denied Melvin's motions. See [D.E. 51].

On May 14, 2015, Melvin moved for a sentence reduction under section 3582(c)(2), U.S.S.G. § 1B1.10, and Amendment 782 to the Sentencing Guidelines. See [D.E. 53]. On September 28, 2017, the court declined to reduce Melvin's sentence. See [D.E. 58].

On January 30, 2019, Melvin moved pro se for a sentence reduction under section 404 of the First Step Act, 132 Stat. at 5222 [D.E. 59, 60]. On January 27, 2020, Melvin, through counsel, supplemented his motion [D.E. 63]. On May 6, 2020, the court denied Melvin's motions [D.E. 68, 69]. Melvin appealed [D.E. 73]. On December 29, 2020, the United States Court of Appeals for the Fourth Circuit affirmed the court's denial. See United States v. Melvin, 832 F. App'x 211, 211–12 (4th Cir. 2020) (per curiam) (unpublished); [D.E. 76, 77].

On April 26, 2021, Melvin moved pro se for compassionate release [D.E. 79]. The court denied his motion [D.E. 80].

On April 12, 2022, Melvin again moved pro se for compassionate release. See [D.E. 82]. The government opposes the motion. See [D.E. 85]. On August 9, 2022, Melvin filed a pro se renewed motion for compassionate release. See [D.E. 89]. On October 31, 2022, Melvin moved for the government to show cause why he should not be granted a sentence reduction. See [D.E. 91].

2

II.

Under 18 U.S.C. § 3582(c)(1)(A), a court may reduce a defendant's term of imprisonment if (1) "extraordinary and compelling reasons warrant such a reduction" or (2) "the defendant is at least 70 years of age, has served at least 30 years in prison," and the Director of the Bureau of Prisons ("BOP") has determined the defendant is not a danger to another person or the community. 18 U.S.C. § 3582(c)(1)(A); see United States v. Hargrove, 30 F.4th 189, 194 (4th Cir. 2022); United States v. High, 997 F.3d 181, 185–86 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330 (4th Cir. 2021) (per curiam), cert. denied, 142 S. Ct. 383 (2021); United States v. McCoy, 981 F.3d 271, 275–77 (4th Cir. 2020). A section 3582(c)(1)(A) sentence reduction must comport with the 18 U.S.C. § 3553(a) factors and applicable Sentencing Commission policy statements. See 18 U.S.C. § 3582(c)(1)(A); Hargrove, 30 F.4th at 194.

Before filing a motion under 18 U.S.C. § 3582(c)(1)(A), a defendant must "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). This requirement is nonjurisdictional, and the government waives a defense based on section 3582(c)(1)(A)'s exhaustion requirements if the government does not timely raise it. See United States v. Muhammad, 16 F.4th 126, 129–30 (4th Cir. 2021).

When considering a defendant's compassionate release motion, the court determines whether extraordinary and compelling circumstances exist and whether, in the court's discretion, those circumstances warrant relief in light of relevant factors in 18 U.S.C. § 3553(a) and applicable Sentencing Commission policy statements. See Hargrove, 30 F.4th at 194–95; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–32. In evaluating the section 3553(a) factors, the court considers, inter

3

alia, the nature and circumstances of the offense, the history and characteristics of the defendant, a defendant's post-sentencing conduct, the need to deter criminal behavior, the need to promote respect for the law, and the need to protect the public. See 18 U.S.C. § 3553(a); Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 997 F.3d at 186; Kibble, 992 F.3d at 331–32; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). Although a court considers a defendant's post-sentencing conduct, rehabilitation alone is not an extraordinary and compelling reason for a sentence reduction. See 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13 cmt. n.3; McCoy, 981 F.3d at 286 n.9.

No Sentencing Commission policy statement currently applies to a defendant's compassionate release motion. See Hargrove, 30 F.4th at 194; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–31; McCoy, 981 F.3d at 281–82. U.S.S.G. § 1B1.13 is a policy statement that applies to compassionate release motions filed by the BOP Director. Nonetheless, section 1B1.13 "remains helpful guidance even when motions are filed by defendants." McCoy, 981 F.3d at 282 n.7; see Hargrove, 30 F.4th at 194. Application Note 1 of U.S.S.G. § 1B1.13 lists several extraordinary and compelling circumstances, including (A) a defendant's serious medical condition, (B) a defendant's age, when coupled with serious physical or mental deterioration due to age and having served 10 years or 75 percent of his or her sentence, (C) certain family circumstances in which a defendant's minor children or incapacitated spouse or registered partner would otherwise have no caregiver, or (D) any other extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1(A). "[A]n extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant" a sentence reduction. Id. § 1B1.13 cmt. n.2.

4

Melvin did not apply to his warden for compassionate release before filing his latest motions. See [D.E. 85] 19. Melvin last applied to his warden on March 17, 2021, before moving for compassionate release on April 26, 2021. See [D.E. 79, 87-2]. The court denied that motion on June 11, 2021. See [D.E. 80]. The government has invoked the section 3582(c)(1)(A) exhaustion requirement. See [D.E. 85] 19–21. Nonetheless, the court assumes that Melvin met the exhaustion requirement and addresses Melvin's motion on the merits. See Muhammad, 16 F.4th at 130.

Melvin seeks compassionate release pursuant to section 3582(c)(1)(A). In his motion filed on April 12, 2022, Melvin cites his medical conditions (hypertension, kidney disease, and high potassium), his rehabilitative efforts, his time served, and his desire to help care for children and grandchildren. See [D.E. 82]. In his renewed motion filed on August 9, 2022, Melvin cites his rehabilitative efforts, his supportive family, and his claim that he would no longer be a career offender under U.S.S.G. § 4B1.1 if sentenced today. See [D.E. 89] 4–21.

As for the "medical condition of the defendant" policy statement, the policy statement requires that the defendant be "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Melvin is 49 years old and, according to medical records, is obese, has hypertension, and has chronic kidney disease. See [D.E. 82] 5; [D.E. 85-1] 2, 5. His high potassium, hernia, and prediabetes are under control. See [D.E. 85-1] 2, 8.

Melvin does not argue that the BOP is not providing needed treatment for his medical conditions or that he is unable to manage his medical conditions while incarcerated. See [D.E. 82, 89]. He also does not argue that his medical conditions put him at heightened risk of serious infection or death from COVID-19. See [D.E. 82, 89]. Melvin had COVID-19 in September 2020

5

and recovered fully. See [D.E. 85] 4; [D.E. 85-1] 8. And Melvin has received three doses of the Pfizer COVID-19 vaccine. See [D.E. 85-1] 12–13. The vaccine and Melvin's natural antibodies provide protection. See, e.g., United States v. Jacques, No. 20-3276, 2022 WL 894695, at *2 (2d Cir. Mar. 28, 2022) (unpublished); United States v. Scalea, No. 21-2631, 2022 WL 795425, at *1 (3d Cir. Mar. 15, 2022) (unpublished) (noting that although "vaccination does not rule out reinfection . . . this does not diminish that vaccination mitigates the risk of COVID-19 complications"); United States v. Shettler, No. 21-10484, 2022 WL 620311, at *4 (11th Cir. Mar. 3, 2022) (per curiam) (unpublished); United States v. Ibarra, No. 21-10255, 2022 WL 229198, at *1 (9th Cir. Jan. 25, 2022) (unpublished); Garrett v. Murphy, 17 F.4th 419, 433 & n.7 (3d Cir. 2021) (discussing natural immunity as a result of recovering from COVID-19); United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021) ("And following full vaccination, it is now well understood, both the likelihood of contracting COVID-19 and the associated risks should one contract the virus are significantly reduced" so that "an inmate largely faces the same risk from COVID-19 as those who are not incarcerated."); United States v. Hald, 8 F.4th 932, 936 n.2 (10th Cir. 2021) (noting "there is certainly room for doubt" that being fully vaccinated or being offered a vaccine "would support a finding of 'extraordinary and compelling reasons'" justifying compassionate release), cert. denied, 142 S. Ct. 2742 (2022); United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."); United States v. Baeza-Vargas, 532 F. Supp. 3d 840, 843–46 (D. Ariz. 2021) (collecting cases showing the "growing consensus" of district courts that have ruled that an inmate receiving a COVID-19 vaccine "weighs against a finding of extraordinary and compelling circumstances"); cf. United States v. Petway, No. 21-6488, 2022 WL 168577, at *2 (4th Cir. Jan. 19, 2022) (per curiam) (unpublished). And the wide

6

availability of COVID-19 vaccines greatly diminishes the risk to Melvin from COVID-19 whether he is in prison or not. See, e.g., Scalea, 2022 WL 795425, at *1; Ibarra, 2022 WL 229198, at *1; Lemons, 15 F.4th at 751; Hald, 8 F.4th at 936 n.2; Broadfield, 5 F.4th at 803; Baeza-Vargas, 532 F. Supp. 3d at 843–46. Therefore, reducing Melvin's sentence because of his risk factors and the general risk of COVID-19 in the prison environment does not comport with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the "family circumstances" policy statement, it does not apply to a desire to care for a minor child when another caregiver is available. See U.S.S.G. § 1B1.13 cmt. n.1. Melvin does not allege that his children's mother or grandchildren's parents are unable to care for them. See [D.E. 82, 89]. Nonetheless, the court considers Melvin's desire to help care for his children and grandchildren under the "other reasons" policy statement and assumes without deciding that it is an extraordinary and compelling reason.

As for the "other reasons" policy statement, Melvin's claim that the court improperly concluded that he is a career offender is not an extraordinary and compelling reasoning warranting compassionate release. This claim attacks the validity of Melvin's sentence. Thus, Melvin should have raised it on direct appeal or under 28 U.S.C. § 2255. See United States v. McCoy, 981 F.3d 271, 287 (4th Cir. 2020) ("[T]he very purpose of [section] 3582(c)(1)(A) is to provide a 'safety valve' that allows for sentence reductions when there is not a specific statute that already affords relief . . . ."); United States v. Handerhan, 789 F. App'x 924, 926 (3d Cir. 2019) (per curiam) (unpublished) ("[Section] 3582(c)(1)(A) provides a mechanism to seek a reduction in the term of a sentence, not to challenge its validity."); United States v. Shull, No. 1:04-cr-18, 2022 WL 179141, at *3 (W.D.N.C. Jan. 19, 2022) (unpublished); United States v. Ferguson, No. 3:04cr13-01, 2021 WL 1701918, at *4 (E.D. Va. Apr. 29, 2021) (unpublished) ("The compassionate release statute

7

allows the court to consider extraordinary and compelling reasons warranting compassionate release, but it does not replace the established mechanism for challenging the validity of a sentence. Nor does it allow the defendant to make arguments that were, or could have been, raised in direct appeal or collateral review."). Melvin did not appeal his conviction and sentence. Melvin also did not file a section 2255 motion, and his deadline to do so has passed. See 28 U.S.C. § 2255(f)(1); Clay v. United States, 537 U.S. 522, 525 (2003); United States v. Sosa, 364 F.3d 507, 509 (4th Cir. 2004) (The defendant "did not file a petition for writ of certiorari in the Supreme Court of the United States, and his conviction thus became 'final' for the purpose of [section] 2255's one year statute of limitations . . . 90 days after we entered judgment."). If the court construed Melvin's motion for compassionate release as a section 2255 motion, it would be untimely.

Alternatively, Melvin's career offender guideline claim fails on the merits. Contrary to Melvin's claim, the court did not rely on Melvin's conviction for breaking and entering to determine his career offender status. See PSR ¶¶ 16, 18–20; [D.E. 89] 8–10. At sentencing, the court properly identified five of Melvin's felony drug convictions that are controlled substance offenses under the advisory guidelines and thus appropriate predicate offenses for career offender status. See U.S.S.G. § 4B1.2(b) ("The term 'controlled substance offense' means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense."); PSR ¶¶ 16, 18; United States v. Corwin, 662 F. App'x 196, 197 (4th Cir. 2016) (per curiam) (unpublished); cf. Lee v. United States, 89 F. Supp. 3d 805, 812–13 (E.D. Va. 2015) (noting that a Virginia conviction for possession with intent to distribute cocaine "is clearly a 'controlled substance offense' under U.S.S.G. § 4B1.1(a)"); Covington v. United States,

No. 5:07-CR-125, 2015 WL 12911625, at *3 (E.D.N.C. Oct. 5, 2015) (unpublished) (noting that a North Carolina felony conviction for possession with the intent to manufacture, sell, and deliver cocaine is a controlled substance offense under U.S.S.G. §§ 4B1.1(a), 4B1.2(b)). Moreover, Melvin's West Virginia conviction for three counts of malicious wounding with a firearm is a crime of violence under the advisory guidelines and thus an appropriate predicate offense. See U.S.S.G. § 4B1.2(b) ("The term 'crime of violence' means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or . . . ."); PSR ¶ 19; United States v. Collins, 412 F.3d 515, 522 (4th Cir. 2005) ("[The defendant's] prior offenses were for possession of crack cocaine with the intent to deliver and malicious wounding. It is undisputed that these crimes were either a 'crime of violence' or a 'controlled substance offense' as defined by [section] 4B1.1, and it was not necessary for the judge to make any findings about the circumstances of these convictions in order to reach this conclusion."); Crump v. United States, No. 3:94-CR-00101, 2019 WL 1396316, at *6–7 (S.D. W. Va. Mar. 6, 2019) (unpublished).

As for Melvin's argument that his conspiracy conviction in paragraph 20 of the PSR is no longer a "controlled substance offense" within the meaning of the career offender guidelines, the court assumes Melvin is correct. See [D.E. 89] 7–8; U.S.S.G. § 4B1.1(a); United States v. Norman, 935 F.3d 232, 237–38 (4th Cir. 2019); United States v. McCollum, 885 F.3d 300, 304–09 (4th Cir. 2018). Even so, the court only needed to identify "two prior felony convictions of either a crime of violence or a controlled substance offense" to classify Melvin as a career offender. See U.S.S.G. § 4B1.1(a). The court did so here and properly classified Melvin as a career offender. See PSR ¶¶ 16, 18–19, 43. Melvin's career offender status is not an extraordinary and compelling reason under section 3582(c)(1)(A).

9

Under the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic, Melvin's medical conditions, his rehabilitative efforts, his time served, his supportive family, and his desire to help care for his children and grandchildren are extraordinary and compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). However, the section 3553(a) factors counsel against reducing Melvin's sentence. See Hargrove, 30 F.4th at 198–99; High, 997 F.3d at 187–91; Kibble, 992 F.3d at 331–32.

Melvin is incarcerated for distributing 50 grams or more of cocaine base ("crack"). See PSR ¶¶ 1–10. Melvin distributed 131.5 grams of cocaine base ("crack"). See id. ¶¶ 6–9. Moreover, Melvin is a violent recidivist, with state convictions for possession of cocaine, possession of marijuana, possession with the intent to manufacture, sell, and deliver marijuana (two counts), maintaining a vehicle for keeping controlled substances, possession of a weapon on school grounds, resisting and obstructing a police officer, possession with the intent to manufacture, sell, and deliver heroin, possession with the intent to manufacture, sell, and deliver cocaine, malicious wounding with a firearm (three counts), and wanton endangerment. See id. ¶¶ 14–19. Before his latest federal conviction, Melvin received federal felony convictions for conspiracy to possess with the intent to distribute and to distribute cocaine base ("crack"), cocaine powder, heroin, and marijuana, and use or carrying of a firearm during and in relation to a drug trafficking crime and aiding and abetting. See id. ¶ 20. Melvin distributed 17.864 kilograms of cocaine base ("crack"), 326.025 grams of cocaine hydrochloride, and 854 grams of heroin. See id. While armed with guns, Melvin and his accomplices twice robbed rival drug dealers of drugs and money. See id. Melvin received a 144-

10

month sentence, which the court later reduced to 108 months. See id. However, Melvin promptly returned to drug dealing and tested positive for marijuana immediately after his release from federal custody. See id. Melvin also has a poor record on supervision, having had his probation revoked. See id. ¶¶ 14, 16.

Melvin has a terrible record while federally incarcerated for his latest conviction. Melvin admits to smoking marijuana and K2 while federally incarcerated on his latest conviction and states that he has "slacked off" and has not taken certain educational courses because he "just wasn't interested." See [D.E. 82] 4–5. He has sustained numerous serious disciplinary infractions, including for refusing work assignments, possessing drugs/alcohol (smoking pipe and marijuana), refusing to obey an order, possessing a nonhazardous tool (smoking apparatus), being absent from an assignment, being unsanitary or untidy, and use of drugs/alcohol (marijuana). See [D.E. 87].

The court must balance Melvin's serious and prolonged criminal conduct, his serious and violent criminal history, his serious misconduct in custody, the need to punish him, the need to promote respect for the law, the need to protect society, and the need to deter others. Cf. Concepcion v. United States, 142 S. Ct. 2389, 2403–04 (2022); Pepper, 562 U.S. at 480–81; United States v. Roane, ___ F.4th ___, ___, Nos. 20-14 & 20-16, 2022 WL 10217083, at *7–9 (4th Cir. 2022); High, 997 F.3d at 187–91; McDonald, 986 F.3d at 412; Martin, 916 F.3d at 398. The court also has considered Melvin's potential exposure to COVID-19, his medical conditions, his vaccinated status, his recovery from COVID-19, his rehabilitative efforts, his time served, and his desire to help care for his children and grandchildren. The court recognizes Melvin has a supportive family. See [D.E. 89] 17. Melvin has not given the court a release plan. Having considered the entire record, the extensive steps that the BOP has taken to address COVID-19, the section 3553(a) factors, Melvin's arguments, the government's persuasive response, the need to punish Melvin for his serious criminal

11

behavior, to incapacitate Melvin, to promote respect for the law, to deter others, and to protect society, the court denies Melvin's motion for compassionate release. See, e.g., Concepcion, 142 S. Ct. at 2403–04; Chavez-Meza, 138 S. Ct. at 1966–68; Roane, ___ F.4th at ___, 2022 WL 10217083, at *7–9; Hargrove, 30 F.4th at 198–200; High, 997 F.3d at 187–91; United States v. Ruffin, 978 F.3d 1000, 1008–09 (6th Cir. 2020); United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); United States v. Hill, No. 4:13-CR-28, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

As for Melvin's request for plenary resentencing, it is not properly raised in a motion for compassionate release. See [D.E. 89] 20. This claim attacks the validity of Melvin's sentence, and Melvin should have raised it on direct appeal or under section 2255. See McCoy, 981 F.3d at 287; Handerhan, 789 F. App'x at 926; Shull, 2022 WL 179141, at *3; Ferguson, 2021 WL 1701918, at *4. Melvin did not appeal his conviction and sentence or timely move under section 2255. See 28 U.S.C. § 2255(f)(1); Clay, 537 U.S. at 525; Sosa, 364 F.3d at 509. Thus, the court denies his request for plenary resentencing.

III.

In sum, the court DENIES defendant's motion for compassionate release [D.E. 82], defendant's renewed motion for compassionate release [D.E. 89], and defendant's motion to appoint counsel [D.E. 82] and DENIES AS MOOT defendant's motion to show cause [D.E. 91].

SO ORDERED. This 7 day of November, 2022.

JAMES C. DEVER III
United States District Judge